Tara B. Keller, Esq., CA #265916
CONSUMER ATTORNEYS PLLC
68-29 Main Street
Flushing, NY 11367
(T): 718-874-6929
(F): (718) 247-8020
(E): tkeller@consumerattorneys.com

*Attorneys for Plaintiff*
*Brian Rivera*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| BRIAN RIVERA,<br><br>Plaintiff,<br><br>vs.<br><br>INTELLIRENT SOLUTIONS, INC.,<br><br>Defendant. | Case No.: 2:26-cv-03151<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Brian Rivera ("Plaintiff") by and through his counsel brings the following Complaint against Intellirent Solutions, Inc., ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report ("consumer report") that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as having an eviction judgment in the amount of $23,316, despite the court's sealing order prohibiting its

disclosure.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate consumer report to Plaintiff's prospective landlord, which included a sealed eviction judgment.

4. Specifically, on August 17, 2025, Defendant collected consumer information from multiple sources, including Contemporary Information Corporation ("CIC") and Experian, and did not merely transmit those source reports exactly as it had received them, but instead combined, organized, and reformulated that information into a new, unified consumer report, which it then furnished to Plaintiff's prospective landlord for use in making a housing eligibility determination.

5. In fact, Los Angeles County Superior Court had sealed the record on August 4, 2025, pursuant to a stipulation and court order, and the case was no longer

reportable or legally disclosable.

6. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the consumer report from Defendant, in which Defendant published a sealed eviction judgment that was no longer legally reportable.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Los Angeles County, California, regarding the sealed unlawful detainer case prior to publishing the information to Plaintiff's prospective landlord.

8. Had Defendant performed even a cursory review of the public court records, it would have discovered that Plaintiff's eviction case had been sealed by court order on August 4, 2025, and therefore was no longer reportable or legally disclosable.

9. Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning Plaintiff. In particular, Defendant failed to implement or follow any procedures to verify whether the eviction-related record it reported remained legally reportable after the entry of a court order sealing the case, including any procedures designed to identify, flag, or exclude sealed or expunged records from its reporting. Upon information and belief, Defendant lacked any meaningful procedures to ensure the accuracy and legal reportability of such information. As a direct result of these failures, Defendant included a sealed and non-reportable judgment in Plaintiff's consumer report,

rendering the report materially inaccurate and misleading.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

11. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, defeat, anxiety, fear of housing instability, and financial loss. The physical injury Plaintiff sustained due to the substantial emotional distress he incurred includes loss of appetite, nausea, headaches, lack of sleep, tiredness, and loss of energy.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

14. Brian Rivera ("Plaintiff") is a natural person residing in Los Angeles, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant Intellirent Solutions, Inc. ("Defendant") is a company that provides background screening services for landlords and residential real estate management companies, doing business throughout the United States, including the State of California and in this District, and has a principal place of business located in San Francisco, California.

16. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

18. Defendant is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which

does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

27. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT'S RECKLESS BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

32. In the tenant screening industry, consumer reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating consumer reports.

33. Consumer Reporting Agencies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling consumer reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is

for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a sealed judgment as an active public record, even though the Los Angeles County Superior Court had sealed the case on August 4, 2025.

39. As a provider of consumer reports, Defendant should be aware of the FCRA requirements.

## FACTS

### Plaintiff Applies for an Apartment with Hope + Flower

40. After years of disciplined financial recovery following the COVID-19 pandemic, Plaintiff sought to establish a fresh start in a home that reflected the stability he had worked hard to rebuild.

41. In or about June 2025, Plaintiff applied for a one-bedroom apartment at Hope + Flower Apartments, a luxury residential tower in downtown Los Angeles

known for its safety, modern amenities, and proximity to his workplace.

42. Plaintiff submitted his first tenant application on or about June 5, 2025.

43. However, Plaintiff's first application was denied after Hope + Flower Apartments received a tenant-screening report generated through RentGrow using Defendant's data, which falsely portrayed Plaintiff as having an eviction judgment from the Los Angeles County Superior Court.

44. Although the record was still public at that time, the experience left Plaintiff discouraged but determined to clear his name and secure the apartment once his legal matter was resolved.

45. On or about August 4, 2025, the Los Angeles County Superior Court issued a Stipulation and Order to Seal Case No. 23STUD14130, rendering the record confidential and legally non-reportable.

46. Armed with this order, Plaintiff reasonably believed that the inaccurate record would no longer appear in any tenant-screening report and that he could reapply in good faith without fear of further prejudice and harm.

47. In or around August 2025, encouraged by the sealing of his record, Plaintiff submitted a second application to Hope + Flower Apartments, confident that the background screening would now reflect his true qualifications. Plaintiff had maintained strong employment, improved his credit, and demonstrated financial reliability, giving him every reason to expect approval this time.

48. The apartment held special personal significance for Plaintiff. The unit

he applied for was approximately 608 square feet, a one-bedroom apartment on an upper floor with panoramic city views, a private balcony, tall ceilings, and in-unit laundry, features Plaintiff had long aspired to enjoy as a symbol of the stability and progress he had achieved through years of hard work and financial responsibility.

49. Plaintiff viewed the Hope + Flower apartment as the new beginning he had been striving toward, a safe, clean, and comfortable residence in the heart of Los Angeles that embodied his financial recovery and personal growth.

**Defendant Published an Inaccurate Consumer Report to Hope + Flower**

50. Hope + Flower is a residential property that evaluates prospective tenants for rental eligibility.

51. In connection with Plaintiff's rental application, Hope + Flower utilized Intellirent Solutions, Inc. to obtain a tenant screening report regarding Plaintiff.

52. On or about August 17, 2025, Defendant prepared and furnished a consumer report concerning Plaintiff to Hope + Flower for use in evaluating Plaintiff's application for housing.

53. In preparing this report, Defendant assembled and evaluated consumer information obtained from multiple sources, including CIC and Experian. Defendant did not merely transmit the information it received, but instead combined, organized, and reformulated that information into a new, unified consumer report that it generated as its own product and furnished to Plaintiff's prospective landlord, Hope + Flower. In doing so, Defendant necessarily assessed and determined that the

information obtained from CIC and Experian pertained to Plaintiff. Defendant therefore evaluated the information by affirmatively determining that it was accurate as to Plaintiff and suitable for publication and disclosure to Hope + Flower, when in fact the information—including the sealed eviction record—was not accurate or legally reportable.

54. The consumer report issued by CIC, is a consumer report regulated by the FCRA.

55. Within that consumer report, Defendant published inaccurate information about Plaintiff.

56. Specifically, Defendant's consumer report about Plaintiff included a sealed judgment from the Los Angeles County Superior Court, which appeared in the consumer report as follows:

**Response ID:** 70556415 **Date pulled:** 08/17/2025 **Data furnished to:** Intellirent
**Applicant Name:** BRIAN RIVERA

**Housing Court Records:**

**1:**
**lname:** RIVERA
**fname:** BRIAN
**address:** [redacted]
**city:** LOS ANGELES
**state:** CA
**zip:** [redacted]
**sc:** P
**activity:**
**court:** LOS ANGELES COUNTY SUPERIOR COURT - STANLEY MOSK
**filing_date:** 2023-10-30
**case_no:** 23STUD14130
**plaintiff:** JECO RESIDENTIAL LP DBA 30SIXTY APARTMENTS
**judgement_date:** 2024-05-29
**judgement_amount:** 23316
**judgement:** PLAINTIFF
**plaintiff_atty:** SEUNGJAE CHA JASON

57. The reporting of this record was false, inaccurate, and unlawful because

the Los Angeles County Superior Court had sealed the case on August 4, 2025, pursuant to a stipulation and court order, thereby rendering the record confidential and legally prohibited from disclosure or inclusion in any tenant screening report.

58. A cursory review of the widely available public court records would have revealed that the case was sealed and unavailable for public inspection.

59. The sole reason the sealed judgment appeared on Plaintiff's consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective landlord.

60. Had Defendant followed reasonable procedures, it would have been discovered the judgement had been sealed by court order on August 4, 2025, and therefore should not have been reported or disclosed in Plaintiff's consumer report.

61. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

62. On or about August 18, 2025, Plaintiff was notified by Hope + Flower Management that his housing application was denied as a direct result of the eviction judgment reported by Defendant.

63. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting, not only the denial of his Hope + Flower apartment

application but also the potential harm to his reputation and future housing opportunities.

64. Specifically, Defendant reported a sealed judgment that had been removed from public access following a court order to seal the case. The public court record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Hope + Flower Apartments, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Inaccuracy in Defendant's Consumer Report**

65. Plaintiff made diligent efforts to correct his reporting by appealing to CIC and Experian.

66. By the time Plaintiff was able to correct his report, Plaintiff had already lost his housing opportunity at Hope + Flower, faced repeated rejections from other landlords relying on Defendant's earlier inaccurate reports, and was forced to extend his existing lease while incurring additional rent, application fees, and emotional distress.

67. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Hope + Flower and other property managers formed a negative opinion about Plaintiff and/or moved on to other candidates.

68. Defendant's false report cost Plaintiff a housing opportunity that represented the culmination of his years of financial recovery and hard work, a modern, secure apartment in downtown Los Angeles that met his needs for

affordability, safety, convenience to his workplace, and access to community.

69. Plaintiff was looking forward to living at Hope + Flower apartment, which he viewed as the fresh start and sense of stability he had long been striving to achieve. The unit perfectly aligned with his needs for affordability, safety, and proximity to his workplace and community, symbolizing the progress he had made after years of disciplined financial rebuilding.

70. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff was repeatedly denied housing despite his continued efforts to secure a new residence. The repeated rejections forced Plaintiff to extend his existing lease beyond its expiration date, resulting in additional rent payments, application fees, and prolonged financial strain.

71. Plaintiff had already paid substantial amounts to resolve the original eviction matter, including a $6,500 settlement payment, $1,575 in attorney's fees, and further expenses related to credit card interest and new rental applications, all of which became even more burdensome because Defendant's inaccurate reporting continued to damage his housing prospects.

72. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73. As a result of Defendant's violations of the FCRA, Plaintiff has suffered

a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I

### 15 U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

75. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

76. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

77. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

78. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

79. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

80. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were knowing or in reckless disregard of its statutory obligations, rendering it liable for actual or statutory damages and punitive damages pursuant to 15 U.S.C. § 1681n. Defendant knew, or should have known, that the practice of collecting and publishing consumer information obtained from third-party sources without implementing and following adequate quality control procedures to verify the accuracy and legal reportability of such information creates a substantial and unjustifiable risk of harm to consumers. In particular, Defendant knew or should have been on notice that blindly incorporating public record data—including court records—without verifying whether such records had been sealed, expunged, or otherwise rendered non-reportable would result in the dissemination of false and misleading information.

81. Defendant nevertheless persisted in this practice, maintaining procedures that were either nonexistent or so deficient as to amount to no meaningful

procedures at all for ensuring that the information it reported was accurate and legally reportable. Despite the obvious and well-known risk that such conduct would lead to the publication of inaccurate and highly prejudicial information—such as sealed eviction records—Defendant failed to implement safeguards to prevent such reporting. This conduct constitutes a reckless disregard for the rights of consumers, including Plaintiff.

82. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 24, 2026

*/s/ Tara B. Keller*

Tara B. Keller, Esq., CA #265916
CONSUMER ATTORNEYS PLLC
68-29 Main Street
Flushing, NY 11367
(T): 718-874-6929
(F): (718) 247-8020
(E): tkeller@consumerattorneys.com

*Attorneys for Plaintiff,*
*Brian Rivera*